IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINDA K. BOYLE, as the personal representative of the Estate of James M. Boyle, deceased;<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | 8:18CV363<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant Union Pacific Railroad Company's ("U.P." or "the Railroad") motion for summary judgment, Filing No. 26, and its motions in limine to exclude the testimony of Stephen Newman, M.D. ("Dr. Newman") and Ralph V. Collipi ("Collipi") under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), Filing Nos. 26, 28 and 30. The plaintiff, Linda K. Boyle, the widow and personal representative of James M. Boyle, deceased ("Mr. Boyle" or "the decedent"), brings this action for wrongful death under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, and the Federal Locomotive Inspection Act, 49 U.S.C. § 20701 *et seq.*, She alleges U.P. negligently exposed the decedent to various toxins and carcinogens during his roughly thirty-five year employment as a maintenance-of-way employee, hostler, and locomotive engineer at U.P and its predecessor, which caused him to develop and die of lung cancer.[1] U.P's motion for summary judgment is dependent on a favorable ruling on its motions to exclude the expert witnesses.

---

[1] In her complaint, the plaintiff alleges that Mr. Boyle was exposed to various toxic substances and carcinogens including but not limited to diesel fuel/fumes/exhaust, benzene, and rock/mineral dust and asbestos fibers. Filing No. 1, Complaint. However, the plaintiff has stipulated to that only exposure to diesel exhaust is at issue in this action. *See* Filing No. 35, Plaintiff's Response Brief at 3 n.1

1

I.  BACKGROUND

As relevant herein, and for purposes of the motion for summary judgment, the parties agree to certain facts. Filing No. 27, U.P. Brief at 3-4; Filing No. 39, Plaintiff's Response at 3-4. The following facts are gleaned from the parties' agreed submissions and from the record.

Mr. Boyle was employed briefly in 1968 for U.P.'s predecessor and began working in 1973 as a machine operator. Filing No. 38-1, Ex. 1, H.R. Report ("Rep't). He was employed from 1975 to 1978 as a truck driver in the maintenance of way department. Id.; Filing No. 38-4, Ex. 4. From the mid-1980s to 2011, Boyle was employed by U.P as a locomotive engineer and hostler. Filing No. 38-1, H.R. Rep't.

He was diagnosed with lung cancer in July 2015. He died on August 4, 2016. The plaintiff sued U.P. under the FELA, alleging that Mr. Boyle's lung cancer was caused by exposure to "various toxic substances" during his railroad employment, including "diesel fuel/fumes/exhaust, benzene, and rock/mineral dust and asbestos fibers." Filing No. 1, Complaint. The plaintiff concedes she is pursuing her claim only as to diesel exhaust. Filing No. 35, Plaintiff's Response Brief at 13 n.6.

The plaintiff designated Stephen L. Newman, M.D., to "testify as to the nature and extent of the Plaintiff's Decedent's injuries as well as their causation (general/specific)." Filing No. 36-1, Ex. 4, Plaintiff's Expert Disclosures. The record shows Dr. Newman has a B.A. in biology, an M.D from Yeshiva University, an M.B.A. from Rutgers University, and is board certified in internal medicine, pulmonary disease and critical care and sleep medicine. Filing No. 32-2, Ex. 2, Dr. Newman Curriculum Vitae ("C.V."). Dr. Newman's expert report states "[w]ithin a reasonable degree of

2

medical certainty, Mr. Boyle developed suffered and died of widely metastatic small cell cancer of the lung as a result of his extensive unprotected exposure to a wide variety of substances including diesel fumes and asbestos[.]" Filing No. 32-2, Ex. 3, Dr. Newman Expert Rep't at 4. In his supplemental report, Dr. Newman states that Mr. Boyle's "tobacco use also contributed to his development of lung cancer." Filing No. 36-1, Ex. 3, Dr. Newman Supplemental ("Supp.") Expert Rep't at 4; *id.*, Ex. 2, Dr. Newman Dep. at 6.

In formulating his opinion, Newman reviewed the complaint and answer, answers to interrogatories, Boyle's employee records, medical records and the report of industrial hygienist Ralph V. Collipi, Jr. Filing No. 32-2, Ex. 3, Dr. Newman Expert Rep't at 1. He also reviewed U.P. training materials and spoke to other U.P. employees. Filing No. 36-1, Ex. 2, Dr. Newman Dep. at 10-11. There is no dispute that Dr. Newman did not request or review any of Mr. Boyle's medical imaging, nor did Dr. Newman ask for such imaging.

Dr. Newman was provided Collipi's industrial hygiene report and he testified he reviewed it. Filing No. 32-4, Dr. Newman Dep. at 66. He also stated the Collipi report was consistent with published studies and Dr. Newman's experience. *Id.* at 46. There is no dispute Dr. Newman did not rely on Collipi's findings or opinions to determine Mr. Boyle's workplace exposure to diesel exhaust. *See id.* Dr. Newman based his opinion as to the amount of diesel exhaust to which Mr. Boyle was exposed on his reading of the plaintiff's deposition, "knowledge of the industry in general," and "reading of the literature." *Id.*

3

Dr. Newman testified he performed a differential etiology or diagnosis. *Id.* at 98-99. He stated he ruled out family history and exposure to radiation as potential causes of Mr. Boyle's lung cancer. *Id.* at 99. Dr. Newman opines that exposure to diesel exhaust can cause lung cancer, and that exposure to diesel exhaust was one of the causes of Mr. Boyle's lung cancer, along with the "indisputably strong risk factor" of his prior smoking history. *Id.* at 71. Dr. Newman cannot quantify the amount of Mr. Boyle's exposures to diesel exhaust. *Id.* at 49, 89. Dr. Newman cannot testify to any range of amounts of diesel exhaust to which Mr. Boyle's may have been exposed, but he testified that Mr. Boyle was exposed "way in excess of a person in the environment of his given town or locale who was not working . . . in his trade." *Id.* at 87. Dr. Newman cannot describe a specific level of diesel exhaust exposure that can cause lung cancer but testified there is no safe level of exposure and occupational exposure causes cancer to be more prevalent than background exposure. *Id.* at 35-36, 96. He stated that any exposure beyond background exposure increases the risk of cancer, stating "each and every fume exposure above and beyond the background environment" contributes to the development of lung cancer. *Id.* at 50-51; *see also id.* at 96. The parties agree that Dr. Newman, does not know the background level of diesel exhaust to which Mr. Boyle was exposed during his life. *Id.* at 52-53. The plaintiff contends no precise studies of background levels for Mr. Boyle's breathing space exist.

The plaintiff designated industrial hygienist Ralph Collipi as her liability expert to testify "generally, as to notice and foreseeability of the hazards associated with the Plaintiff's Decedent's crafts, including exposure to carcinogens and the railroad industry's knowledge of the hazards of exposure to toxins." Filing No. 36-1, Ex. 4,

Plaintiff's Expert Disclosure at 1. He has B.A. in Zoology from the University of New Hampshire and an M.S. in Environmental Studies from the University of Massachusetts. Filing No. 38-7, Ex. 7, Collipi C.V. at 4. He is a certified industrial hygienist, a certified hazardous materials manager and a certified professional environmental, health and safety auditor. *Id.* He has worked as an industrial hygienist and occupational health and safety professional since 1980. Filing No. 38-8, Collipi Expert Rep't at 1.

Collipi reviewed documents provided by the plaintiff's counsel including the request for production response documents, scientific literature, numerous government publications and peer-reviewed articles and he conducted a telephone interview with Terry Osborne, co-worker and brother-in-law of the decedent, to formulate his opinions. *Id.* at 1, 19-20. He also reviewed air sampling information provided by U.P. Filing No. 38-13, Ex. 13, Collipi Supp. Expert Rep't at 3-6. Collipi's exposure opinions are limited to diesel exhaust and its components, such as "formaldehyde, elemental carbon, nitrous oxide, and PAH's from other substances like creosote." *See* Filing No. 38-8, Collipi Dep. at 7. Collipi expressed the opinion that Mr. Boyle's exposure to carcinogenic and mutagenic emissions while performing railroad work and working as a hostler and engineer and his related injury and illness is the direct result of U.P.'s failure to perform exposure assessments, to implement and enforce respiratory protection, and to warn the plaintiff's decedent of the hazards. Filing No. 38-9, Collipi Expert Rep't at 4. The parties agree that Collipi has never been inside a railyard, has never ridden inside a locomotive, and did not perform any exposure modeling for diesel exhaust when developing his opinions.

Collipi admits he did not calculate or estimate Mr. Boyle's average dose of exposure to diesel exhaust.  Filing No. 38-8, Collipi Dep. at 119, 121.  The parties agree that Collipi did not perform a dose estimation of Mr. Boyle's exposure to any subcomponent of diesel exhaust.  *Id.* at 140, 151.  Collipi testified, however, that there is no threshold dose response for carcinogens.  *Id.* at 120.  He relied on the Pronk study for the proposition that at low levels of diesel exposure, there is an increase in lung cancer.[2]  *Id.*

U.P. moves to exclude the proposed expert testimony of both Dr. Newman and Collipi.  It contends Dr. Newman's causation opinions are inadmissible under Federal Rule of Civil Procedure 702 because Dr. Newman has no knowledge of Mr. Boyle's work tasks or workplace, does not know the amount or dose of exposure to diesel exhaust that may cause lung cancer, and cannot identify how much exposure Mr. Boyle may have had to diesel exhaust.  U.P. also challenges Collipi's exposure opinion as scientifically unreliable, arguing that Collipi has no facts or data from which to determine the decedent's exposure.

U.P. next contends that if either expert's testimony is excluded, the plaintiff cannot prove causation and U.P. is entitled to a summary judgment of dismissal.  In response, Boyle argues that the defendant's *Daubert* challenges go to the weight, not the admissibility, of the evidence, and contends that genuine issues of fact preclude summary judgment.

---

[2] Pronk, et al, Journal of Exposure Science and Epidemiology, *Occupational Exposure to Diesel Exhaust: A Literature Review* (July 2009).  See Filing No. 38-13, Collipi Supp. Expert Rep't at 3 n.9.

II.  LAW

    A.  Summary Judgment

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (*en banc*) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.*

    B.  Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the evidence must be based on scientific, technical or other

7

specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy. *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003). When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); see *Daubert*, 509 U.S. at 589. Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. *Kudabeck*, 338 F.3d at 860. To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence "that the methodology underlying [the expert's] conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (citations omitted).

> In making the reliability determination, the court may consider:
> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operations; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). Additional factors to consider include: "'whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.'" *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 449 (8th Cir. 2008)).

8

"This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject" these factors as the particular case demands. *Whirlpool,* 702 F.3d at 456 (citation omitted). When making the reliability inquiry, the court should focus on "principles and methodology, not on the conclusions that they generate." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012). However, "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The proponent of expert testimony bears the burden of providing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). "When the application of a scientific methodology is challenged as unreliable under *Daubert* and the methodology itself is sufficiently reliable, outright exclusion of the evidence is warranted only if the methodology 'was so altered by a deficient application as to skew the methodology itself.'" *United States v. Gipson*, 383 F.3d 689, 697 (8th Cir. 2004) (emphasis in original) (quoting *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993)). Generally, deficiencies in application go to the weight of the evidence, not its admissibility. See *id.; Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) noting that it is up to the opposing party to examine the factual basis for the opinion in cross-examination). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

"[C]ases are legion" in the Eighth Circuit that "call for the liberal admission of expert testimony." *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 562 (8th Cir. 2014).

"As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross–examination, rather than excluded by the court at the outset." *Id.* (quoting *Daubert*, 509 U.S. at 590). District courts are "not to weigh or assess the correctness of competing expert opinions." *Id.* The jury, not the trial court, should be the one to 'decide among the conflicting views of different experts.'" *Kumho Tire Co.*, 526 U.S. at 153. Medical experts often disagree on diagnosis and causation and questions of conflicting evidence must be left for the jury's determination. *Hose v. Chicago Nw. Transp. Corp.*, 70 F.3d 968, 976 (8th Cir. 1995).

C.  The FELA

Railroads are liable in damages for an employee's "injury or death resulting in whole or in part from the Railroad's negligence." 45 U.S.C. § 51. Appraising negligence under FELA "turns on principles of common law . . . , subject to such qualifications [that] Congress" introduces. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543-44 (1994) (noting the qualifications are the modification or abrogation of several common-law defenses to liability, including contributory negligence and assumption of risk). The FELA is to be liberally construed, but it is not a workers' compensation statute, and the basis of liability is "negligence, not the fact that injuries occur." *Id.* at 543.

The FELA imposes upon employers a continuous duty to provide a reasonably safe place to work. *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 889 (8th Cir. 2012). The railroad's duty to provide a safe workplace is a duty of reasonable care. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011). However, "a relaxed standard of causation

applies under FELA." *Gottshall*, 512 U.S. at 543; *see Holloway v. Union Pac. R.R. Co.*, 762 F. App'x 350, 352 (8th Cir. 2019). The test is simply whether the railroad's negligence played a part—no matter how small—in bringing about the injury. *McBride*, 564 U.S. at 705; *see also Paul v. Mo. Pac. R.R. Co.*, 963 F.2d 1058, 1061 (8th Cir. 1992)(stating that "[u]nder FELA, the plaintiff carries only a slight burden on causation."). In FELA cases, the negligence of the defendant need not be the sole cause or whole cause of the plaintiff's injuries. *Claar v. Burlington N.R.R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994).

Despite the lower causation standard under FELA, a plaintiff must still demonstrate some causal connection between a defendant's negligence and his or her injuries. *Brooks v. Union Pac. R.R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010). In order to avoid summary judgment, a FELA plaintiff is required to produce admissible evidence that the railroad's negligence played a part in causing his alleged injury. *Id.* If an injury has "no obvious origin, 'expert testimony is necessary to establish even that small quantum of causation required by FELA.'" *Id.* (quoting *Claar*, 29 F.3d at 504); *see also Mayhew v. Bell S.S. Co.*, 917 F.2d 961, 963 (6th Cir. 1990) ("[A]lthough a[n FELA] plaintiff need not make a showing that the employer's negligence was the sole cause, there must be a sufficient showing (i.e. more than a possibility) that a causal relation existed.").

"The standard of causation under FELA and the standards for admission of expert testimony under the Federal Rules of Evidence are distinct issues and do not affect one another." *Claar*, 29 F.3d at 503. *Daubert's* standards for determining the admissibility of expert testimony apply regardless of whether the plaintiff's burden to

11

prove causation is reduced. *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 47 (2d Cir. 2004) (involving Jones Act and stating that "the standards for determining the reliability and credibility of expert testimony are not altered merely because the burden of proof is relaxed"); *see also Taylor v. Consol. Rail Corp.*, No. 96-3579, 114 F.3d 1189 (Table), 1997 WL 321142, at *6–7 (6th Cir. June 11, 1997) (noting it is well established that the admissibility of expert testimony is controlled by *Daubert*, even in FELA cases); *Hose*, 70 F.3d at 976 (applying *Daubert* in an FELA case).

A differential diagnosis is "an alternative method of establishing causation" that may be utilized where the particular facts of the case do not lend themselves to quantitative analysis. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 261 (6th Cir. 2001) (rejecting defendant railroad's argument that the only way the plaintiff could establish causation would be with the proffer of a known "dose/response relationship" or "threshold phenomenon[,]"). "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001) (involving state-law products liability action and finding an FDA decision to remove a drug from marketplace was "unreliable proof of medical causation . . . because the FDA employs a reduced standard (vis-à-vis tort liability)" of proof on causation).

In the Eighth Circuit, differential diagnoses in general pass muster under the four considerations identified in *Daubert*. *Johnson*, 754 F.3d at 564 (agreeing with other circuits that a differential diagnosis is a tested methodology, has been subjected to peer review/publication, does not frequently lead to incorrect results, and is generally

accepted in the medical community). In fact, the Eighth Circuit has "termed an opinion [based on a differential diagnosis] 'presumptively admissible,' noting that a district court may not exclude such expert testimony unless the diagnoses are 'scientifically invalid.'" *Id.* Also, the Eighth Circuit has "consistently ruled that experts are not required to rule out all possible causes when performing the differential etiology analysis." *Id.* at 563. In the context of the FELA, a plaintiff need not necessarily prove the levels of a toxin to which he or she was exposed.[3] *See Hardyman*, 243 F.3d at 262-66 (reversing trial court's ruling that plaintiff could establish causation only by showing a "dose/response relationship" between exposure levels and risk of disease and finding that an expert need not possess specific dosage information in order to testify about causation in an FELA case); *Harbin v. Burlington N.R.R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990) (finding a plaintiff need not identify the specific composition and density of soot present in his work environment to survive a summary judgment—although "expert testimony documenting the hazards posed by the presence of so many parts per million of soot in the air would certainly enhance [the plaintiff's] case, it is not essential under the regime

---

[3] The defendant's reliance on toxic-tort cases involving general negligence principles is misplaced. In an ordinary negligence action for exposure to a toxic substance, "at a minimum . . . there must be evidence from which the factfinder can conclude that the plaintiff was exposed to levels of [the toxic agent at issue] that are known to cause the kind of harm that the plaintiff claims to have suffered." *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 860 (8th Cir. 2002) (addressing causation in the context ordinary negligence and a proximate cause standard). To prove causation in a toxic tort case, a plaintiff must show both that the alleged toxin is capable of causing injuries like that suffered by the plaintiff in persons subjected to the same level of exposure as the plaintiff, and that the toxin was the cause of the plaintiff's injury. *Wright v. Willamette Indus.*, 91 F.3d 1105, 1106 (8th Cir. 1996) (under Arkansas law, applying a proximate cause standard that required evidence from which a reasonable person could conclude that a defendant's emission had *probably caused* harm in order to recover). However, even under common-law negligence standards, a plaintiff does not need to produce a "mathematically precise table equating levels of exposure with levels of harm" to show that he was exposed to a toxic level of a chemical, but must only present "evidence from which a reasonable person could conclude that his exposure *probably caused* his injuries." *Bonner*, 259 F.3d at 928 (emphasis added). "[W]hile precise information concerning the exposure necessary to cause specific harm to humans and exact details pertaining to the plaintiff's exposure are beneficial, [it must be recognized that] such evidence is not always available, or necessary, . . . and need not invariably provide the basis for an expert's opinion on causation." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 264 (4th Cir. 1999) (involving a strict liability, breach of warranty, and negligence action).

of the [FELA]."); *Higgins v. Consol. Rail Corp.*, No. 1:06-CV-689 GLS/DRH, 2008 WL 5054224, at *4 (N.D.N.Y. Nov. 21, 2008) (finding an issue of fact on causation even in the absence of expert testimony, and stating that, and stating that, due to the slight burden of proof in FELA actions, a jury may make inferences in an FELA case that it otherwise could not); *Sunnycalb v. CSX Transp., Inc.*, 926 F. Supp. 2d 988, 995-96 (S.D. Ohio 2013) (finding that the plaintiff's inability to establish a precise level of chemical exposure did not bar recovery under FELA—the evidence was sufficient for the jury to draw the reasonable inference that CSX's negligence played a part in plaintiff's injuries); *Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 457 (Tenn. 2015) ("[S]tated simply, the Plaintiff's experts were not required to establish 'a dose exposure above a certain amount' before they could testify about causation."); and *Russell v. Ill. Cent. R.R.*, No. W2013-02453-COA-R3-CV, 2015 WL 4039982, *2-*5 (Tenn. Ct. App. 2015) (rejecting defendant railroad's contention that an expert's opinions were not reliable because the differential diagnoses on which they were based "did not consider the dose, frequency or duration" of the plaintiff's exposure to carcinogens at work).

III.   DISCUSSION

The Court first finds the Railroad's motions to exclude the testimony of Dr. Newman and Collipi should be denied. Both experts are clearly qualified to render their opinions and their opinions are relevant and reliable enough to pass muster under Rule 702 and *Daubert*. The Court rejects the defendant's contention that Dr. Newman's testimony is not supported by scientific literature or a reliable methodology. Dr. Newman testified that he relied on the plaintiff's co-worker's descriptions of employment in the context of peer-reviewed studies of exposure involving railroad workers and

similar occupations. He based his testimony on an interview with the co-worker, the decedent's spouse's deposition testimony, review of certain pleadings, review of the plaintiff's medical records, and on his own extensive knowledge, experience, and expertise in the field of internal and occupational medicine.

He performed a differential diagnosis or etiology based on the plaintiff's medical records and history, based on a review of the scientific literature. The differential diagnosis is a tested methodology that has been subjected to peer review/publication, has been shown not to frequently lead to incorrect results, and is accepted in the medical community. His finding that Boyle's chronic exposure to toxins was a significant factor in the development of lung cancer has an adequate factual basis. Dr. Newman properly extrapolated his opinion from the facts and scientific literature. Notably, Dr. Newman, acknowledged that cigarette smoking was also a causative factor. In an FELA case, an expert is not required to determine which of several potential causes was most likely to cause the plaintiff's cancer. The Court finds Dr. Newman's testimony is sufficient with respect to specific and general causation.

Collipi's testimony is similarly sufficient to withstand a *Daubert* challenge. The defendant's criticisms go to the weight, rather than the admissibility of his testimony. Collipi interviewed a co-worker of the decedent and conducted a literature review. His methodology was reasonable in light of his familiarity with industrial hygiene standards. He has the qualifications and expertise to express an opinion on the decedent's working conditions and the standard of care.

Both experts' testimony will assist the trier of fact in determining the Railroad's potential liability in light of the requisite causation standard. The opinion testimony is

relevant and reliable to show that U.P.'s allegedly negligent conduct in exposing Its employee to toxins for many years played a part in causing the plaintiff's decedent's lung cancer and death. The lack of quantitative data is not fatal to the admissibility of the experts' opinions since the lack of such data is typical in epidemiological cases. Any shortcomings in the experts' evaluations are properly the subject of cross-examination and do not call for exclusion of the testimony.

U.P.'s mistaken reliance on caselaw involving toxic tort actions brought pursuant to general negligence principles rather than FELA cases lessens the value of its arguments. The defendant's position would have more force if the case required a showing of proximate cause. If the plaintiff had to prove the exposure proximately caused the injury, the experts' testimony might not be sufficiently tied to the facts of the case to assist the jury. Under the FELA, however, the plaintiff need not demonstrate the railroad's conduct was the proximate cause, but only that it played a part—no matter how small—in the injury.[4]

The Court finds the experts' opinions are tied to the facts of the case and are supported by accepted scientific theories. The record shows the experts based their opinions on medical records, peer-reviewed studies, and evidence of exposures that covered a long period of time. They also relied on their education and experience in the

---

[4] Moreover, the defendant's reliance on other cases in this district that come to a contrary conclusion is unavailing. See *Harder v. Union Pac. R.R. Co.*, No. 8:18CV58, 2020 WL 469880, at *1 (D. Neb. Jan. 29, 2020) (excluding expert's testimony because he was unaware of the plaintiff's length of exposure, concentration of exposure, and the atmosphere of exposure), *appeal docketed*, No. 20-1417 (8th Cir. Mar. 2, 2020); *McLaughlin v. BNSF Ry. Co.*, No. 4:18-CV-3047, 2020 WL 641729, at *6 (D. Neb. Feb. 11, 2020) (excluding expert's causation testimony for failure to adequately rule in diesel exhaust as a cause, however small, of the carman plaintiff's lung cancer and failed to adequately rule out thirty-year, pack-and-a-half-a-day cigarette smoking as the sole cause of the lung cancer), *appeal docketed*, No. 20-1494 (8th Cir. Mar. 10, 2020); *West v. Union Pac. R.R. Co.*, No. 8:17CV36, 2020 WL 531994, at *5 (D. Neb. Feb. 3, 2020) (excluding the causation testimony of an expert as speculation based only on the job the plaintiff held, without reliance on the testimony of an industrial hygiene expert or other facts or data), *appeal docketed*, No. 20-1422 (8th Cir. Mar. 4, 2020). This Court is not bound by those decisions, they involved different experts, facts, and evidence. Also, the decisions are pending on appeal.

fields of statistics, toxicology, and industrial hygiene. The defendant's criticisms go to the weight, rather than the admissibility of the testimony. Whatever weaknesses there are in the experts' testimony can be explored in cross-examination.

IV. CONCLUSION

In conclusion, the Court's review of the record shows that the scientific testimony at issue rests on "appropriate validation—i.e., 'good grounds', based on what is known," *Daubert*, 509 U.S. 590, and "should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson*, 754 F.3d at 562. The experts' opinion are not so "fundamentally unsupported that [the testimony] can offer no assistance to the jury." *Bonner*, 259 F.3d at 929–30.

The Court finds the methodology employed by the plaintiff's experts is scientifically valid, can properly be applied to the facts of this case, and is reliable enough to assist the trier of fact. This is not the sort of junk science that *Daubert* addresses.

With the admission of the expert testimony, there is an issue of fact for the jury on the exposures and whether the exposures contributed to Mr. Boyle's metastatic lung cancer. U.P. has not shown as a matter of law that the plaintiff cannot establish that U.P.'s negligence "played a part" in Mr. Boyle's cancer. Accordingly, the Court finds the defendant's motion for summary judgment should also be denied.

IT IS ORDERED:

1. The defendant's motion for summary judgment (Filing No. 26) is denied.

2. The defendant's motions in limine (Filing Nos. 28 and 30) are denied.

Dated this 22nd day of October, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge
